UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| MOLLY CAROLINE MCCRAE, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BROWARD COUNTY and CITY OF FORT LAUDERDALE,<br><br>Defendants. | Civil Action No.: 0:15-cv-61927<br><br>**COMPLAINT - - CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**NATURE OF ACTION**

1.     This case involves violations of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721 *et seq*., by local law enforcement officers who impermissibly obtained the motor vehicle records of Broward County public defenders who sought deposition and trial testimony from those officers.

2.     Congress passed the DPPA amid public concern regarding the ability of criminals and stalkers to obtain information about potential victims. A particular spur to action was the 1989 murder of the television actress Rebecca Schaeffer by a fan who had obtained her address from the California Department of Motor Vehicles ("DMV").  Addressing the problem of allowing requesters to gain access to personal information without a legitimate purpose, and because of the potential for unauthorized dissemination and misuse of this personal information, Congress established a regulatory scheme that restricts the ability of state DMVs to disclose a driver's personal information without the driver's consent. To that end, the DPPA prohibits state DMVs from disclosing personal information in a motor vehicle record except for uses explicitly

1

enumerated in the statute. *See* 18 U.S.C. § 2721(a)-(b). "Personal information" is defined as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5–digit zip code), telephone number, and medical or disability information." *Id.* § 2725(3).

3. Indeed, to obtain a driver's license or motor vehicle registration from a state DMV, individuals must disclose this personal and sensitive information. With respect to public defenders who represent defendants often accused of violent felonies, this private information is particularly sensitive and in need of protection.

4. While personal information in a motor vehicle record may be disclosed by a state DMV for, among other permissible uses, "use by any government agency, including any court or law enforcement agency, in carrying out its functions," "[f]or use in connection with any civil, criminal, administrative, or arbitral proceeding" or for "investigation in anticipation of litigation," *Id.* § 2721(b)(1), (4), those exemptions are not applicable here, and provide no justification for obtaining motor vehicle records of public defenders.

5. Rather, this case centers on the practice, by law enforcement officers employed by Broward County and the City of Fort Lauderdale, of obtaining protected personal information from the DMV records of Broward County public defenders, without any permissible purpose for doing so. While these law enforcement personnel may have obtained public defenders' motor vehicle records to gather personal information about an attorney in advance of trial or deposition testimony, or just purely out of curiosity, there is no legitimate basis for obtaining private, personal information about public defenders who are not parties or witnesses to criminal proceedings or investigations.

6. Given the line of work of public defenders, maintaining the privacy of their personal information—including pictures, home address, home telephone number, social security number, and medical information—is of paramount importance. As such, unauthorized access to a public defender's motor vehicle records constitutes a potentially dangerous violation of the DPPA.

## PARTIES

7. Molly Caroline McCrae ("Plaintiff") is a natural person who at all relevant times resided in Broward County, Florida.

8. Plaintiff is an attorney employed by the Broward County Public Defender's Office.

9. Plaintiff has been a public defender since 2009, and now focuses on defending homicide cases, including those where the state seeks the death penalty.

10. At all relevant times, Plaintiff had a valid Florida driver's license, and provided her personal information to the state DMV for the purpose of obtaining and maintaining her driver's license.

11. Defendant Broward County is a municipality that oversees the Broward County Sheriff's Office. Officers employed by the Broward County Sheriff's Office are employees of Broward County, and Broward County assumes responsibility for the actions undertaken by its law enforcement personnel. Broward County grants and controls its officers' access to the Driver and Vehicle Information Database ("D.A.V.I.D.") that is maintained by the Florida DMV. When accessing the D.A.V.I.D. system, officers are doing so in their official capacity. That is, an officer may not access D.A.V.I.D for personal purposes. In order to have access to D.A.V.I.D., Broward County was required to execute a memorandum of understanding with the

Florida DMV. That memorandum of understanding requires Broward County to ensure its officers safeguard the information available in D.A.V.I.D. The safeguard requirements expressly include prohibiting "queries not related to a legitimate business purpose." Broward County has failed to enact or enforce the necessary safeguards, as officers have queried public defenders for purposes unrelated to any legitimate business purpose.

12. Defendant City of Fort Lauderdale is a municipality that oversees the City of Fort Lauderdale Police Department. Officers employed by the City of Fort Lauderdale are employees of the City of Fort Lauderdale, and the City of Fort Lauderdale assumes responsibility for the actions undertaken by its law enforcement personnel. The City of Fort Lauderdale grants and controls its officers' access to D.A.V.I.D. In order to have access to D.A.V.I.D., the City of Fort Lauderdale was required to execute a memorandum of understanding with the Florida DMV. That memorandum of understanding requires the City of Fort Lauderdale to ensure its officers safeguard the information available in D.A.V.I.D. The safeguard requirements expressly include prohibiting "queries not related to a legitimate business purpose." The City of Fort Lauderdale has failed to enact or enforce the necessary safeguards, as officers have queried public defenders for purposes unrelated to any legitimate business purpose.

## JURISDICTION AND VENUE

13. This Court has jurisdiction pursuant to 18 U.S.C. § 2724(a) and 28 U.S.C. § 1331.

14. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this district, where Plaintiff resides in this district, and where Defendants reside in this district.

**FACTUAL ALLEGATIONS**

15. Plaintiff is, and has been since 2009, a public defender employed by the Broward County Public Defender's Office.

16. From 2011 to 2012, and as part of her job responsibilities, Plaintiff primarily defended second and third-degree felony cases, such as those involving grand theft, simple possession, burglary of a dwelling, and felony battery.

17. As part of defending and representing her clients, Plaintiff frequently takes the depositions of law enforcement officers, including those employed by Broward County and the City of Fort Lauderdale. Plaintiff also cross-examines officers at trial and evidentiary hearings.

18. Plaintiff has never been informed, and has no reason to believe, that she was ever the object or focus of any regulatory or criminal investigation, including any such investigation undertaken by the Broward County Sheriff's Office or the City of Fort Lauderdale Police Department.

19. Moreover, Plaintiff has never been stopped or pulled over while driving a motor vehicle in Broward County or the City of Fort Lauderdale, nor has she been issued a traffic ticket or warning within Broward County.

20. In addition, Plaintiff has never been arrested within Broward County or accused of a crime within Broward County.

21. Likewise, Plaintiff has never filed a police report with the Broward County Sheriff's Office or the City of Fort Lauderdale Police Department, nor has Plaintiff initiated any internal affairs complaints.

22. As a result of a concern that her motor vehicle records may have been inappropriately accessed, Plaintiff requested from the State of Florida a listing of the instances, if

any, where her motor vehicle records were obtained, from August 3, 2011 through August 3, 2015.

23. In response to Plaintiff's request, the Florida Department of Highway Safety & Motor Vehicles provided Plaintiff with a written report showing that law enforcement officers from the Fort Lauderdale Police Department and the Broward County Sheriff's Office obtained Plaintiff's motor vehicle records on four separate occasions in 2011 and 2012.

24. More specifically, on September 17, 2011 at 6:02 p.m., officer Ethan Hodge of the Fort Lauderdale Police Department obtained Plaintiff's motor vehicle records through D.A.V.I.D. At the time he obtained Plaintiff's motor vehicle record, Mr. Hodge was a City of Fort Lauderdale employee, and he obtained Plaintiff's records with actual or apparent authority to do so, which authority was granted to him by the City of Fort Lauderdale.

25. Ten days beforehand, on September 7, 2011, Plaintiff caused a subpoena to be issued to Mr. Hodge to appear for deposition on September 19, 2011 in connection with a third-degree felony case. Plaintiff, who represented the defendant in the case, ultimately took Mr. Hodge's deposition on September 23, 2011—just days after Mr. Hodge obtained her motor vehicle records.

26. Because Mr. Hodge obtained Plaintiff's motor vehicle records within days of a subpoena for deposition from her and shortly before the scheduled deposition, the only plausible inference is that Mr. Hodge sought Plaintiff's private records to access confidential, personal information about her in advance of providing testimony.

27. Because Plaintiff was not a party to the case to which Mr. Hodge provided testimony, but rather was an attorney who represented the defendant, Mr. Hodge had no legitimate purpose for obtaining Plaintiff's motor vehicle records.

28. Separately, officer Ronald Cusumano of the Broward County Sheriff's Office obtained Plaintiff's motor vehicle record on November 3, 2011 at 9:23 a.m. On November 3, 2011, Plaintiff was in court at an all-day calendar call.

29. At the time he obtained Plaintiff's motor vehicle record, Mr. Cusumano was a Broward County employee, and he obtained Plaintiff's record with actual or apparent authority to do so, which authority was granted to him by Broward County.

30. At the time, Mr. Cusumano was listed as a witness in a third-degree felony case for which Plaintiff served as the attorney for the defendant. As a result of an October 20, 2011 calendar call, Mr. Cusumano would have been issued a standby subpoena, or otherwise placed on notice of the need for his testimony, by the State Attorney's Office. Pursuant to the standby subpoena or notice, Mr. Cusumano was to be prepared to testify in the case during either the last week in October 2011 or the first week of November 2011.

31. Mr. Cusumano knew that Plaintiff represented the defendant in the case for which he was issued a standby subpoena or notice. It was during this time period—on November 3, 2011—that Mr. Cusumano obtained Plaintiff's motor vehicle record.

32. Because Mr. Cusumano obtained Plaintiff's motor vehicle record during the two-week time period for which he was to testify in a case being defended by Plaintiff, the only plausible inference is that Mr. Cusumano sought Plaintiff's private records to access confidential, personal information about her in advance of providing testimony.

33. Because Plaintiff was not a party to the case to which Mr. Cusumano was to provide testimony, but rather was an attorney who represented the defendant, Mr. Cusumano had no legitimate purpose for obtaining Plaintiff's motor vehicle record.

34. Separately, officer Anthony Lucca of the Broward County Sheriff's Office obtained Plaintiff's motor vehicle records, twice, on August 24, 2012. Mr. Lucca obtained Plaintiff's motor vehicle records at 10:25 a.m. and 10:26 a.m. At the time he obtained Plaintiff's motor vehicle record, Mr. Lucca was a Broward County employee, and he obtained Plaintiff's record with actual or apparent authority to do so, which authority was granted to him by Broward County.

35. There was no permissible purpose for these law enforcement officers to obtain Plaintiff's motor vehicle records.

36. Plaintiff never provided her consent to the City of Fort Lauderdale Police Department, the Broward County Sheriff's Office, or any law enforcement officers to obtain her motor vehicle records.

37. By obtaining her motor vehicle records in violation of the DPPA, the City of Fort Lauderdale and Broward County have made Plaintiff feel at risk and as if she is subject to law enforcement scrutiny as a result of her work as a public defender.

38. Upon information and belief, and given the repeated efforts to obtain Plaintiff's motor vehicle records without a permissible purpose—particularly in proximity to dates on which Plaintiff was to take the testimony of these officers—law enforcement officers employed by Broward County and the City of Fort Lauderdale routinely obtain private motor vehicle records of Broward County public defenders, without consent and without a permissible purpose for doing so.

**CLASS ACTION ALLEGATIONS**

39. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class defined as:

>All current or former employees of the Broward County Public Defender's Office whose motor vehicle records were obtained by a Broward County or City of Fort Lauderdale employee, within the four years before the date of this complaint, after that Broward County or City of Fort Lauderdale employee was issued a subpoena or notice for testimony in connection with a proceeding to which the subject of the motor vehicle records request was among counsel of record.

40. The proposed class is so numerous that joinder of all members is impracticable. The exact number of class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery. The proposed class is ascertainable in that the names of all members of the proposed class can be identified in business records maintained by the Department of Highway Safety & Motor Vehicles, Broward County, the City of Fort Lauderdale, and the Broward County Public Defender's Office. Plaintiff estimates that at least 200 different attorneys worked at the Broward County Public Defender's Office from 2011 to the present.

41. Plaintiff's claims are typical of the claims of the members of the class because the claims of Plaintiff and all of the members of the class originate from the same conduct, practice and procedure on the part of Defendants and Plaintiff possesses the same interests and has suffered the same injuries as each member of the proposed class. Specifically, Plaintiff is a Broward County public defender who had her motor vehicle records obtained by Broward County and the City of Fort Lauderdale without her consent and without a permissible purpose for doing so.

42. Plaintiff will fairly and adequately protect the interests of the members of the class and has retained counsel experienced and competent in class action litigation. Plaintiff has no interests that are contrary to or in conflict with the members of the class that Plaintiff seeks to represent.

43. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, as

9

the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

44.     Issues of law and fact common to the members of the class predominate over any questions that may affect only individual members, in that Defendants have acted on grounds generally applicable to the class.  Among the issues of law and fact common to the class are:

   a. Defendants' violations of the DPPA as alleged herein;

   b. Whether officers of the Broward County Sheriff's Office have a permissible reason for obtaining the private motor vehicle records of Broward County public defenders as a result of being noticed for testimony;

   c. Whether officers of the City of Fort Lauderdale Police Department have a permissible reason for obtaining the private motor vehicle records of Broward County public defenders as a result of being noticed for testimony;

   d. the existence of Defendants' identical conduct particular to the matters at issue;

   e. the availability of liquidated damages;

   f. the availability of punitive damages; and

   g. the availability of attorneys' fees and costs.

**COUNT I: VIOLATION OF THE DRIVER'S PRIVACY PROTECTION ACT**
**18 U.S.C. § 2722(a)**
**On Behalf of Plaintiff and the Class**

45.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 – 44.

46.     18 U.S.C. § 2722(a) provides:

**(a) Procurement for unlawful purpose.**--It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

47. 18 U.S.C. § 2721(b) provides for the following permitted uses for obtaining personal information from a motor vehicle record:

**(b) Permissible uses.**--Personal information referred to in subsection (a) shall be disclosed for use in connection with matters of motor vehicle or driver safety and theft, motor vehicle emissions, motor vehicle product alterations, recalls, or advisories, performance monitoring of motor vehicles and dealers by motor vehicle manufacturers, and removal of non-owner records from the original owner records of motor vehicle manufacturers to carry out the purposes of titles I and IV of the Anti Car Theft Act of 1992, the Automobile Information Disclosure Act (15 U.S.C. 1231 et seq.), the Clean Air Act (42 U.S.C. 7401 et seq.), and chapters 301, 305, and 321-331 of title 49, and, subject to subsection (a)(2), may be disclosed as follows:

**(1)** For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions;

**(2)** For use in connection with matters of motor vehicle or driver safety and theft; motor vehicle emissions; motor vehicle product alterations, recalls, or advisories; performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research activities, including survey research; and removal of non-owner records from the original owner records of motor vehicle manufacturers.

**(3)** For use in the normal course of business by a legitimate business or its agents, employees, or contractors, but only—

> **(A)** to verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors; and
>
> **(B)** if such information as so submitted is not correct or is no longer correct, to obtain the correct information, but only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual.

**(4)** For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

**(5)** For use in research activities, and for use in producing statistical reports, so long as the personal information is not published, redisclosed, or used to contact individuals.

**(6)** For use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting.

**(7)** For use in providing notice to the owners of towed or impounded vehicles.

**(8)** For use by any licensed private investigative agency or licensed security service for any purpose permitted under this subsection.

**(9)** For use by an employer or its agent or insurer to obtain or verify information relating to a holder of a commercial driver's license that is required under chapter 313 of title 49.

**(10)** For use in connection with the operation of private toll transportation facilities.

**(11)** For any other use in response to requests for individual motor vehicle records if the State has obtained the express consent of the person to whom such personal information pertains.

**(12)** For bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains.

**(13)** For use by any requester, if the requester demonstrates it has obtained the written consent of the individual to whom the information pertains.

**(14)** For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety.

48.     On at least one occasion, the City of Fort Lauderdale knowingly obtained Plaintiff's motor vehicle record, for a use not permitted under the DPPA.

49.     On at least three separate occasions, Broward County knowingly obtained Plaintiff's motor vehicle record, for a use not permitted under the DPPA.

50.     Broward County and the City of Fort Lauderdale did not obtain Plaintiff's motor vehicle record for the purpose of carrying out any official functions. Rather, and upon information and belief, law enforcement officers obtained Plaintiff's motor vehicle record for the

purpose of personal curiosity or to improperly acquire non-public information about a defendant's attorney.

51. Likewise, Broward County and the City of Fort Lauderdale did not obtain Plaintiff's motor vehicle record in connection with any civil, criminal, administrative, or arbitral proceeding, or pursuant to an order of a Federal, State, or local court.

52. To be sure, Plaintiff was never the object or focus of any investigation or proceeding, nor was she a party to any such proceeding.

53. As a public defender representing defendants accused of crimes, Plaintiff's private, personal motor vehicle records have no bearing on or relevance to any proceedings for which Plaintiff served as counsel of record.

54. Plaintiff never provided her consent to Broward County, or to the City of Fort Lauderdale, to obtain her motor vehicle record.

55. As a result, Broward County and the City of Fort Lauderdale violated 18 U.S.C. § 2721(b).

**WHEREFORE**, Plaintiff respectfully requests for relief and judgment, as follows:

a. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

b. Adjudging and declaring that Defendants violated 18 U.S.C. § 2721(b);

c. Enjoining Defendants from future violations of 18 U.S.C. § 2721(b) with respect to Plaintiff and the class, pursuant to 18 U.S.C. § 2724(b)(4);

d. Awarding Plaintiff and members the class liquidated damages sustained as a result of Defendants' violations, in the amount of $2,500 per violation, pursuant to 18 U.S.C. § 2724(b)(1);

e. Awarding Plaintiff and members the class punitive damages sustained as a result of Defendants' violations, pursuant to 18 U.S.C. § 2724(b)(2);

f. Awarding Plaintiff and members of the class their reasonable costs and attorneys' fees incurred in this action, including expert fees, pursuant to 18 U.S.C. § 2724(b)(3) and Rule 23 of the Federal Rules of Civil Procedure;

g. Awarding Plaintiff and members the class any pre-judgment and post-judgment interest as may be allowed under the law; and

h. Awarding other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

Plaintiff is entitled to and hereby demands a trial by jury.

DATED:  September 11, 2015                             Respectfully submitted,

/s/ Paul Kunz
Paul Kunz (FBN 0159492)
**BANDER LAW FIRM PLLC**
174 NE 96th Street
Miami, FL 33138
Phone: (786) 871.2262
Fax: (786) 924.1230
paul@bandervisa.com


/s/ Michael L. Greenwald
Michael L. Greenwald (FBN: 761761)
Jesse S. Johnson (FBN: 69154)
**GREENWALD DAVIDSON RADBIL PLLC**
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Phone: (561) 826.5477
Fax: (561) 961.5684
mgreenwald@gdrlawfirm.com
jjohnson@gdrlawfirm.com

Co-Counsel for Plaintiff and the class